

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

CCC:MKC
F. #2018R02025

*610 Federal Plaza*
*Central Islip, New York 11722*

May 7, 2020

By Hand and ECF

The Honorable Joanna Seybert
Senior United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      Re:   United States v. William Gace
             Criminal Docket No. 19-258 (JS)

Dear Judge Seybert:

      The government respectfully submits this letter in connection with the sentencing of the above-referenced defendant, currently scheduled before Your Honor for Friday, May 8, 2019. While the government does not object to a below-guidelines sentence, we respectfully submit that at least a 60-month term of imprisonment is appropriate in this case and therefore object to the defendant's request for a sentence of time-served (19 months).[1] As such, it is the government's position that sentencing in this case should be held over until the defendant is able to appear in Court.

I.     Sentencing by Video-Conference

      Due to the COVID-19 pandemic, this sentencing is scheduled to proceed via video teleconference. The Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") provides that felony sentencings may occur by video teleconferencing during the coronavirus national emergency only if three requirements are satisfied. CARES Act, § 15002. First, the Judicial Conference of the United States must find that the coronavirus emergency will materially affect the functioning of the federal courts generally or will affect

---

[1] The government also asks the Court to impose restitution in the amount of $3,000 as set forth more fully in the government's accompanying restitution request, filed separately and under seal.

the functioning of a particular court. CARES Act, § 15002(b)(2)(A). Second, the chief district judge of the relevant district must find that appearances "cannot be conducted in person without seriously jeopardizing public health and safety." Id. Third, the district judge in each particular case must find "for specific reasons that the [plea or sentencing] . . . in that case cannot be further delayed without serious harm to the interests of justice." Id.

Here, the first two requirements have already been satisfied. The Judicial Conference of the United States has found that the coronavirus emergency will materially affect the functioning of the federal courts. See "Judiciary Authorizes Video/Audio Access During COVID-19 Pandemic," Administrative Office of the United States Courts (published March 31, 2020).[2] Likewise, the Chief Judge of the Eastern District of New York has found that appearances "cannot be conducted in person without seriously jeopardizing public health and safety." See Administrative Order 2020-13, dated March 30, 2020. The final requirement, however, is not met by the facts of this case. Judge Mauskopf's Order, and the CARES Act specify that, "[i]n each particular case, the Court must find "for specific reasons that the [sentencing] . . . in that case cannot be further delayed without serious harm to the interests of justice." Id. Absent such a finding, a sentence may not proceed via video teleconference.

By letter dated April 16, 2020 (ECF No. 27) defense counsel requested that this sentencing proceed via video teleconference, citing concerns that the defendant is at high-risk of suffering serious complications if he were to contract COVID-19. Defendant is likewise requesting a sentence of time-served, which the government understands the defendant is likewise proffering as a basis for proceeding via video-teleconference. The governments notes, however, that a sentence of time-served (or 19 months) would be an extraordinary deviation from the applicable Guidelines range of 120 months. While both the government and probation agree that a below-guidelines sentence may be appropriate in this matter, probation has recommended a term of imprisonment of 60 months. The government likewise recommends a term of incarceration of at least 60 months and objects to a time-served sentence as insufficient to serve the interests of justice.

Indeed, a request to proceed with sentencing via video-conference was recently denied by Judge Irizarry under similar circumstances. In United States v. Harry, 19-CR-535, the defendant sought to proceed with sentencing via video teleconference in light of the "special dangers posed to inmates by the current public health crisis and what [counsel] believe[s] is a strong case for a time served sentence." (modifications in original). Judge Irizarry noted the important reasons for sentencings to be conducted in person, described the exceptions created by the CARES Act, and found that advancing the sentence was not warranted because (a) the defendant did not have conditions that made him especially vulnerable to contracting COVID-19, and (b) the Court rejected the "rather presumptuous assumption[] that this Court would concur with his sentence recommendation of time served

---

[2] https://www.uscourts.gov/news/2020/03/31/judiciary-authorizes-videoaudio-access-during-covid-19-pandemic

(approximately five months, which would be a substantial downward variance from the projected guidelines range of 24 to 30 months)[.]" Id. at ECF No. 15.

Likewise here, the defendant has not established sufficient bases for this Court to find that the interests of justice will be harmed if sentence is delayed until the defendant can appear in court. As in Harry, the defendant has not proffered any specific conditions that render him particularly vulnerable to contracting or suffering complications from COVID-19 and a sentence of time-served would be a substantial variation that is not warranted on the facts of this case. The basis for the government's position that a time-served sentence would be insufficient to serve the goals of sentencing is discussed in further detail below.

II.     Background

In July 2018, agents from the Federal Bureau of Investigation ("FBI") received an investigative lead indicating that the defendant was transmitting and receiving images of child pornography via the Kik Messenger Program ("Kik"). Presentence Investigation Report dated March 9, 2020 ("PSR") at ¶ 3. Specifically, law enforcement identified an individual acting under the username "MoistMargaret," who shared four images of child pornography to a group chat. Id. at ¶ 5. The IP address linked to that account led law enforcement to the defendant's residence in Farmingdale, New York. Id.

On September 10, 2018, law enforcement officers visited the defendant's residence to interview its occupants. Id. at ¶ 6. After their arrival, the defendant overheard law enforcement officers speaking with members of his household and, as he later admitted, proceeded to delete images and videos of child pornography contained on his cellular telephone. Id. He subsequently signed a consent to search his cellular telephone, but failed to note that he had also removed its SD Card. Id. at ¶ 7. He only provided the SD Card when asked about it after a physical inspection of his phone revealed that it was missing. Id. In addition, the defendant minimized and/or lied about his criminal conduct by, for example, denying recent use of Kik. Still, he admitted to owning child pornography images depicting children of "all ages," and having struggled with child pornography for years. Id.

Despite the defendant's obstructive efforts, child pornography was recovered from the SD Card and his cellular telephone. Those images can be summarized as follows:

- A 30-second video of a female child 7 to 9 years old crying and screaming as she is restrained and raped by an adult male standing behind her. Id. at 8.

- A 30-second video of an adult male repeatedly forcing an infant/toddler-aged child's mouth over his erect penis. Id. at 8.

- A more than 2-minute video where a female child approximately 9 to 11 years old is forcefully and repeatedly anally raped by an adult male. Id. at 8.

3

- A more than 5-minute video where a female child approximately 6 to 8 years old is repeatedly digitally penetrated by an adult male and also forced to perform oral sex on that male. Id. at 8.

- A more than 5-minute video of three female children approximately 6 to 9 years old. One of the victims' hands have been tied to her ankles with duct tape. Throughout the video, she is raped by an adult male. The adult male also pours hot wax on the child's vagina, repeatedly smacks the child's vagina and then again rapes the child with a vibrating phallic device. Id. at 8.

- A more than 4-minute video of a female and male child aged 10-12 years old wherein the male, while naked, engages in sexual conduct with the female, including simulated penetration. Id. at 8.

- A more than 3 minute video where a female child approximately 12-13 years old is depicted naked on a bed and performing oral sex on an adult male. Id. at 8.

Law enforcement officers returned to the defendant's residence on October 12, 2018 to arrest the defendant. Id. at 9. At that time, the defendant submitted to an interview, where he admitted: (1) previously lying to law enforcement when he denied knowledge of a specific email address law enforcement asked about in their first encounter with him; (2) obtaining child pornography from various message boards; and (3) viewing child pornography since his last encounter with law enforcement. Id.

On October 25, 2019, the defendant pleaded guilty to Count One of the resulting indictment, which charged the defendant with the possession of child pornography. Id. at 1.

III.  Guidelines Calculations

The government agrees with the calculations under the United States Sentencing Guidelines ("U.S.S.G." or "the Guidelines") as calculated in the PSR. The defendant has also stated that he does not object to the Guidelines calculation as set forth in the PSR.

| | |
|---|---|
| Base Offense Level (§2G2.2(a)(1)) | 18 |
| Plus: Material Involves Infants and Toddlers (§2G2.2(b)(2)) | +2 |
| Plus: Defendant shared images of child pornography (§2G2.2(b)(3)(F)) | +2 |
| Plus: Material Portrayed Sadistic Conduct and the Sexual Abuse of an Infant or Toddler (§2G2.2(b)(4)) | +4 |

4

| | |
|---|---:|
| Plus: Use of Computer (§2G2.2(6)) | +2 |
| Plus: Offense Involved 600 or More Images (§2G2.2(b)(7)(D)) | +5 |
| Plus: Obstruction (§3C1.1) | +2 |
| Less: Acceptance of Responsibility (§3E1.1(a) and (b)) | -3 |
| Total: | 32 |

The defendant's criminal history category is I. The corresponding Guidelines range of imprisonment is 121 to 151 months. Id. at ¶ 95. However, because the statutorily authorized maximum sentence is 10 years, the effective guideline term of imprisonment is 120 months. Id. There is also a mandatory minimum term of supervised release of 60 months. Id. at ¶ 96.

IV.  Discussion

The defendant requests a sentence of time-served, or approximately 19 months. In doing so, the defendant primarily calls into question the validity of the various Guidelines enhancements applicable in child pornography cases. While the Guidelines are advisory, the Court is still required to consider them in fashioning a sentence consistent with the factors detailed in 18 U.S.C. § 3553(a). Here, even if the Court were to disregard each of the child pornography enhancements, the base offense level (18), combined with the defendant's obstruction (2), would call for a guidelines of range of 33-41 months, which is well above the 19-month sentence defendant requests.

The defendant's papers rely heavily on the Second Circuit's guidance with respect to child pornography cases as set forth in United States v. Dorvee. 616 F.3d 174 (2d Cir. 2010) (noting that "unless applied with great care," the child pornography Guidelines "can lead to unreasonable sentences"). However, the defendant reads Dorvee too broadly. Dorvee stands simply for the proposition that, in determining the reasonableness of a sentence for a particular defendant, the district court must conduct its own independent review of the § 3553(a) sentencing factors. 616 F.3d at 182. In particular, the Dorvee court expressed concern that the practical results of the Guidelines applicable in child pornography cases is to "eviscerate [] the fundamental statutory requirement in § 3553(a) that district courts consider 'the nature and circumstances of the offense and the history and characteristics of the defendant . . . .'" Id. at 96-97.

Under Section 3553(a), the sentence imposed must be "sufficient, but not greater than necessary" to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide correctional treatment in the most effective manner. See Section 3553(a). The Court must

5

also consider a number of other factors, including but not limited to the nature of the offense; the history and characteristics of the defendant; "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct"; and the need to provide restitution to any victims. See Section 3553. Here, the government submits that, above and beyond the applicable Guidelines range, the sentencing considerations outlined in Section 3553(a) call for a much more substantial sentence than the time-served judgement defendant requests.

A. <u>The Nature and Circumstances of the Offence</u>

The images law enforcement were able to recover in this case are concerning. The defendant's sentencing submission highlighted <u>Dorvee's</u> observation that the majority of child pornography cases involve images of "prepubescent minors," or minors younger than 12 years old. That does not mitigate the conduct at issue here, because this defendant's collection did not simply include prepubescent minors. Rather, the defendant's images included a video of an <u>infant</u> being used to perform oral sex on an adult male. The defendant's selection of a video recording the abuse of an infant is an aggravating factor that sets him apart from other child pornography defendants.

Likewise, the images law enforcement recovered included a video of a 6-9 year old child having hot wax poured on her vagina while her arms were duct taped to her ankles. This goes above and beyond the kind of bondage that might be seen in other cases. Nor can the instant case be compared to cases like <u>Tutty</u>, where the defendant received an enhancement for sadistic materials based upon a single photo. 612 F.3d 128, 130-131 (2010). Indeed, as the PSR noted, even in the small collection law enforcement was able to recover, depictions of force were not uncommon. For example, law enforcement recovered a video of another child 7-9 years old screaming as she is restrained and raped, and a video of a petite 9-11 year old child being forcefully anally raped. These materials are consistent with the results of the defendant's evaluation by First Light, which indicated a diagnosis of Paraphilic Disorder (sexual arousing fantasies, urges or behaviors that are distressing or disabling and involve inanimate objects, children, or nonconsenting adults, or suffering of humiliation of oneself or the partner with the potential to cause harm). PSR ¶ 64.

The defendant's obstruction must also be considered. Because the defendant deleted materials from his phone, there can be no certainty regarding the true nature and extent of the defendant's collection. However, the defendant did acknowledge that he had been viewing child pornography for years (PSR ¶ 7), and a preview of the images he collected over those years can be gleaned from the videos recovered in spite of his obstruction. The foregoing counsels in favor of a more significant sentence than time-served.

B. <u>The History and Characteristics of the Defendant</u>

There are also several factors to support the conclusion that the defendant represents a danger to the community. As already noted, the defendant admitted viewing child pornography for at least several years, albeit with claimed periods of abstention.

6

Significantly, however, the defendant's psychological evaluations note that he tends to minimize his behavior and struggles to admit wrongdoing. PSR ¶ 65. In his evaluation at Butner, he denied, for example, using child pornography for sexual arousal. He later admitted to probation that he is aroused by images of child pornography and acknowledged masturbating to images of minor females as young as approximately eight years old. PSR ¶ 63. The defendant's struggle to acknowledge the extent of his criminal conduct raises concerns over his ability to refrain from re-offending in the future.

That concern is amplified by the defendant's admissions that he has "less than complete control over his pornography viewing." Id. at ¶ 64. Indeed, he admitted acting on a foot fetish by surreptitiously photographing the feet of female (adult) students in his classes. Id. at ¶ 65. He also reported a substantial substance abuse beginning at age 15 and including marijuana, speed, prescription pain killers, cocaine, mushrooms, and acid. These factors must be considered when assessing the defendant's potential danger to the community and his ability to inhibit his sexual tendencies, which, as noted by First Light' evaluation, included a persistent sexual interest in children ages 11-14, with a primary sexual interest in minor females ages 14-17. Id. at ¶ 64.

C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense

The serious of the instant offense should not be understated—although it often is. The possession of child pornography is not a victimless crime. In a child pornography case such as this one, the primary victims are the children depicted. United States v. Shutic, 274 F.3d 1123, 1126 (7th Cir. 2001); United States v. Sherman, 268 F.3d 539, 547 48 (7th Cir, 2001). As the Sherman Court noted, "child pornography directly victimizes the children portrayed by violating their right to privacy." Id. As such, "[o]ne of the reasons for criminalizing the 'mere' possession of child pornography is to create an incentive for the possessor to destroy the material, and alleviate some of these harms to the children depicted." Sherman, 268 F.3d at 547.

Congress also acknowledged that "child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years. . . ." Child Pornography Prevention Act of 1996, Pub.L. 104 208, sec. 121, 110 Stat. 3009 26, reprinted in 18 U.S.C. 2251 note at 611. The Third Circuit Court of Appeals has summarized well the devastating, long-term impact of these offenses on the children who are victimized and abused for the entertainment of an online audience:

> The simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials. "The materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation." New York v. Ferber, 458 U.S. 747, 759 (1982); see also Osborne v. Ohio, 495 U.S. 103, 111 (1990) ("The pornography's continued existence causes the child victims

7

> continuing harm by haunting the children for years to come."). Consumers such as [the defendant] who "merely" or "passively" receive or possess child pornography directly contribute to this continuing victimization. Having paid others to 'act out' for him, the victims are no less damaged for his having remained safely at home....

United States v. Goff, 501 F.3d 250, 258-259 (3d Cir. 2007) (footnotes omitted).

The fact that the children suffer the sexual abuse in the first place is a horrible reality. The defendant, by consuming the images of their suffering—continued their exploitation for his own sexual gratification. An example of that ongoing victimization is apparent here, as the videos recovered from the defendant's phone included images of the sexual abuse of a known victim identified as "Jenny." Id. at ¶¶11-12. Jenny's victim statement is included in the PSR, and specifies the lifelong trauma to which she has been subjected, not just by her abuser, but by virtue of the fact that individuals, like the defendant, have perpetuated her victimization by viewing images of her abuse. She states: "I worry about the pictures of me that are out there and I hate that others see them. I have feared over the years that someone would recognize me in public." Id. This is precisely the kind of harm identified in Shutic: "children . . . suffer profound emotional repercussions from a fear of exposure, and the tension of keeping the abuse a secret . . . . concern for the welfare of the children who are used to create pornography is part of the public concern over child pornography." Shutic, at 1126. (citations omitted). The government submits that a time-served sentence would not adequately represent the seriousness of such an offense.

D. The Need to Afford Adequate Deterrence to Criminal Conduct, and to Protect the Public from Further Crimes of the Defendant

Specific deterrence is of particular concern in this case. Law enforcement questioned the defendant about child pornography and seized his electronic devices more than a month before he was arrested in this case. PSR ¶¶ 6 and 9. In that timeframe, with the threat of indictment and arrest looming, the defendant still continued to view child pornography. PSR ¶ 9. While the government acknowledges that the defendant submitted himself to therapy following what he referred to as a relapse, the fact remains that even the threat of impending punishment was not sufficient to deter the defendant from additional criminal conduct. To achieve that deterrence in this case, the Court should impose a significant prison term beyond the 19-month term defendant proposes.

E. The Need to Avoid Unwarranted Sentencing Disparities

The sentence imposed must also seek to avoid unwarranted sentencing disparities. However, a downward variance to a sentence more than 100 months below the Guidelines will do the opposite. Aggravating factors here raise concerns over the defendant's potential for recidivism and for the nature of the conduct he will engage in if he does re-offend. A 19-month sentence would not appropriately address those concerns in this or any other case.

V.	Conclusion

For the reasons set forth herein, the government respectfully requests that the Court impose a least a 60-month term of imprisonment. The government also respectfully requests that the Court impose restitution in the amount of $3,000 as set forth in the Restitution Request, which is submitted separately and under seal.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:   /s/ Monica K. Castro
Monica K. Castro
Assistant U.S. Attorney
(631) 715-7894

cc:	Clerk of Court (JS) (By ECF and Email)
Charles Hochbaum (By ECF and Email)
U.S. Probation Officer Lisa Langone (By Email)