

**JOYCE A. SMITH**
ACTING DISTRICT ATTORNEY

RACKETS & ENTERPRISE CRIME
BUREAU

Rick Whelan, Chief

# OFFICE OF THE DISTRICT ATTORNEY
# NASSAU COUNTY

August 13, 2021

The Honorable Joanna Seybert
Senior United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      Re: United States v. William Gace
          Criminal Docket No. 19-258 (JS)

Dear Judge Seybert:

    The People of the State of New York respectfully submit this letter with regards to the above referenced individual, who was sentenced before Your Honor on or about May 8, 2020. The Nassau County District Attorney's Office has been asked to conduct a Sex Offender Registration Act hearing on Mr. Gace pursuant to his move into Nassau County. For this hearing, the People have received the Sentencing Memo of the United States Attorney, filed with Your Honor on May 7, 2020 (attached herein as Exhibit 1). We have also received the Board of Examiners of Sex Offenders Recommendation Letter, filed with Nassau County Superior Court Judge, the Honorable Robert G. Bogle, on April 15, 2021 (attached herein as Exhibit 2). Both supporting documents cite a psychological evaluation conducted on Mr. Gace by First Light (*see* Exhibit 1, page 6, paragraph 2 and Exhibit 2, page 10, paragraph 1) which resulted in a diagnosis of paraphilia.

    According to the Board of Examiners of Sex Offenders Risk Assessment Instrument, a criminal assessment that the offender has a psychological, physical, or organic abnormality that decreases ability to control impulsive sexual behavior is grounds for a presumptive override to a Level 3; a diagnosis of paraphilia by First Light would be one such criminal assessment. The People have attempted to view First Light's findings to use in our determination of Mr. Gace's sex offender level; however the United State's Attorney's Office does not have a copy in their file to share, his federal probation officer is prohibited from sharing any information with our office and First Light cannot honor the So Order Subpoena issued by Judge Bogle (attached herein as Exhibit 3).

    As such, the People of the State of Nassau County are asking Your Honor to release the psychological reports, diagnoses, and sexual history polygraph test report to the Nassau County District Attorney's Office. The People believe this information is crucial in assessing Mr. Gace's risk level classification. Furthermore, the People will need to prove the facts to support our risk level classification by clear and convincing evidence with the best evidence possible. Arguably, the summary of First Light's findings by Assistant United States Attorney Castro in the Sentencing Memo (Exhibit 1) may be deemed reliable hearsay, and thereby admissible at hearing. Nevertheless, this potential diagnosis is so compelling and would have such a substantial effect on the risk assessment, that access to the original document would be necessitated to request such a serious override.

Releasing these documents to the Nassau County District Attorney's Office would impart no harm to Mr. Gace , as he would already have access to his own medical records produced in connection with his underlying case, while withholding them would greatly prejudice and hinder the People in establishing the appropriate risk assessment level to counteract his risk to re-offend.

For the reasons set forth herein, the People request that the Court release to the Nassau County District Attorney's Office, the psychological reports, diagnoses and sexual history polygraph test report of William Gace from First Light.

Respectfully yours,

JOYCE A. SMITH
ACTING DISTRICT ATTORNEY

By:  _____

ADA Melissa Scannell
Office of the District Attorney
Nassau County

# EXHIBIT 1



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| CCC:MKC | *610 Federal Plaza* |
| F. #2018R02025 | *Central Islip, New York 11722* |

May 7, 2020

By Hand and ECF

The Honorable Joanna Seybert
Senior United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      Re:    United States v. William Gace
            Criminal Docket No. 19-258 (JS)

Dear Judge Seybert:

      The government respectfully submits this letter in connection with the sentencing of the above-referenced defendant, currently scheduled before Your Honor for Friday, May 8, 2019.  While the government does not object to a below-guidelines sentence, we respectfully submit that at least a 60-month term of imprisonment is appropriate in this case and therefore object to the defendant's request for a sentence of time-served (19 months).[1]  As such, it is the government's position that sentencing in this case should be held over until the defendant is able to appear in Court.

I.     Sentencing by Video-Conference

      Due to the COVID-19 pandemic, this sentencing is scheduled to proceed via video teleconference.  The Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") provides that felony sentencings may occur by video teleconferencing during the coronavirus national emergency only if three requirements are satisfied.  CARES Act, § 15002.  First, the Judicial Conference of the United States must find that the coronavirus emergency will materially affect the functioning of the federal courts generally or will affect

---

      [1] The government also asks the Court to impose restitution in the amount of $3,000 as set forth more fully in the government's accompanying restitution request, filed separately and under seal.

the functioning of a particular court.  CARES Act, § 15002(b)(2)(A).  Second, the chief district judge of the relevant district must find that appearances "cannot be conducted in person without seriously jeopardizing public health and safety."  Id.  Third, the district judge in each particular case must find "for specific reasons that the [plea or sentencing] . . . in that case cannot be further delayed without serious harm to the interests of justice."  Id.

Here, the first two requirements have already been satisfied.  The Judicial Conference of the United States has found that the coronavirus emergency will materially affect the functioning of the federal courts.  See "Judiciary Authorizes Video/Audio Access During COVID-19 Pandemic," Administrative Office of the United States Courts (published March 31, 2020).[2]  Likewise, the Chief Judge of the Eastern District of New York has found that appearances "cannot be conducted in person without seriously jeopardizing public health and safety."  See Administrative Order 2020-13, dated March 30, 2020.  The final requirement, however, is not met by the facts of this case.  Judge Mauskopf's Order, and the CARES Act specify that, "[i]n each particular case, the Court must find "for specific reasons that the [sentencing] . . . in that case cannot be further delayed without serious harm to the interests of justice."  Id.  Absent such a finding, a sentence may not proceed via video teleconference.

By letter dated April 16, 2020 (ECF No. 27) defense counsel requested that this sentencing proceed via video teleconference, citing concerns that the defendant is at high-risk of suffering serious complications if he were to contract COVID-19.  Defendant is likewise requesting a sentence of time-served, which the government understands the defendant is likewise proffering as a basis for proceeding via video-teleconference.  The governments notes, however, that a sentence of time-served (or 19 months) would be an extraordinary deviation from the applicable Guidelines range of 120 months.  While both the government and probation agree that a below-guidelines sentence may be appropriate in this matter, probation has recommended a term of imprisonment of 60 months.  The government likewise recommends a term of incarceration of at least 60 months and objects to a time-served sentence as insufficient to serve the interests of justice.

Indeed, a request to proceed with sentencing via video-conference was recently denied by Judge Irizarry under similar circumstances.  In United States v. Harry, 19-CR-535, the defendant sought to proceed with sentencing via video teleconference in light of the "special dangers posed to inmates by the current public health crisis and what [counsel] believe[s] is a strong case for a time served sentence." (modifications in original).  Judge Irizarry noted the important reasons for sentencings to be conducted in person, described the exceptions created by the CARES Act, and found that advancing the sentence was not warranted because (a) the defendant did not have conditions that made him especially vulnerable to contracting COVID-19, and (b) the Court rejected the "rather presumptuous assumption[] that this Court would concur with his sentence recommendation of time served

---

[2] https://www.uscourts.gov/news/2020/03/31/judiciary-authorizes-videoaudio-access-during-covid-19-pandemic

(approximately five months, which would be a substantial downward variance from the projected guidelines range of 24 to 30 months)[.]"  Id. at ECF No. 15.

Likewise here, the defendant has not established sufficient bases for this Court to find that the interests of justice will be harmed if sentence is delayed until the defendant can appear in court.  As in Harry, the defendant has not proffered any specific conditions that render him particularly vulnerable to contracting or suffering complications from COVID-19 and a sentence of time-served would be a substantial variation that is not warranted on the facts of this case.  The basis for the government's position that a time-served sentence would be insufficient to serve the goals of sentencing is discussed in further detail below.

## II.   Background

In July 2018, agents from the Federal Bureau of Investigation ("FBI") received an investigative lead indicating that the defendant was transmitting and receiving images of child pornography via the Kik Messenger Program ("Kik").  Presentence Investigation Report dated March 9, 2020 ("PSR") at ¶ 3.  Specifically, law enforcement identified an individual acting under the username "MoistMargaret," who shared four images of child pornography to a group chat.  Id. at ¶ 5.  The IP address linked to that account led law enforcement to the defendant's residence in Farmingdale, New York.  Id.

On September 10, 2018, law enforcement officers visited the defendant's residence to interview its occupants.  Id. at ¶ 6.  After their arrival, the defendant overheard law enforcement officers speaking with members of his household and, as he later admitted, proceeded to delete images and videos of child pornography contained on his cellular telephone.  Id.  He subsequently signed a consent to search his cellular telephone, but failed to note that he had also removed its SD Card.  Id. at ¶ 7.  He only provided the SD Card when asked about it after a physical inspection of his phone revealed that it was missing.  Id. In addition, the defendant minimized and/or lied about his criminal conduct by, for example, denying recent use of Kik.  Still, he admitted to owning child pornography images depicting children of "all ages," and having struggled with child pornography for years.  Id.

Despite the defendant's obstructive efforts, child pornography was recovered from the SD Card and his cellular telephone.  Those images can be summarized as follows:

- A 30-second video of a female child 7 to 9 years old crying and screaming as she is restrained and raped by an adult male standing behind her.  Id. at 8.

- A 30-second video of an adult male repeatedly forcing an infant/toddler-aged child's mouth over his erect penis.  Id. at 8.

- A more than 2-minute video where a female child approximately 9 to 11 years old is forcefully and repeatedly anally raped by an adult male.  Id. at 8.

- A more than 5-minute video where a female child approximately 6 to 8 years old is repeatedly digitally penetrated by an adult male and also forced to perform oral sex on that male.  Id. at 8.

- A more than 5-minute video of three female children approximately 6 to 9 years old.  One of the victims' hands have been tied to her ankles with duct tape.  Throughout the video, she is raped by an adult male.  The adult male also pours hot wax on the child's vagina, repeatedly smacks the child's vagina and then again rapes the child with a vibrating phallic device.  Id. at 8.

- A more than 4-minute video of a female and male child aged 10-12 years old wherein the male, while naked, engages in sexual conduct with the female, including simulated penetration.  Id. at 8.

- A more than 3 minute video where a female child approximately 12-13 years old is depicted naked on a bed and performing oral sex on an adult male.  Id. at 8.

Law enforcement officers returned to the defendant's residence on October 12, 2018 to arrest the defendant.  Id. at 9.  At that time, the defendant submitted to an interview, where he admitted:  (1) previously lying to law enforcement when he denied knowledge of a specific email address law enforcement asked about in their first encounter with him; (2) obtaining child pornography from various message boards; and (3) viewing child pornography since his last encounter with law enforcement.  Id.

On October 25, 2019, the defendant pleaded guilty to Count One of the resulting indictment, which charged the defendant with the possession of child pornography.  Id. at 1.

III.   Guidelines Calculations

The government agrees with the calculations under the United States Sentencing Guidelines ("U.S.S.G." or "the Guidelines") as calculated in the PSR.  The defendant has also stated that he does not object to the Guidelines calculation as set forth in the PSR.

| | |
|---|---|
| Base Offense Level (§2G2.2(a)(1)) | 18 |
| Plus: Material Involves Infants and Toddlers (§2G2.2(b)(2)) | +2 |
| Plus:  Defendant shared images of child pornography (§2G2.2(b)(3)(F)) | +2 |
| Plus: Material Portrayed Sadistic Conduct and the Sexual Abuse of an Infant or Toddler (§2G2.2(b)(4)) | +4 |

4

Plus: Use of Computer (§2G2.2(6))                                    +2

Plus: Offense Involved 600 or More Images (§2G2.2(b)(7)(D))          +5

Plus: Obstruction (§3C1.1)                                          +2

Less: Acceptance of Responsibility (§3E1.1(a) and (b))             <u>-3</u>

Total:                                                              32

     The defendant's criminal history category is I.  The corresponding Guidelines range of imprisonment is 121 to 151 months.  <u>Id.</u> at ¶ 95.  However, because the statutorily authorized maximum sentence is 10 years, the effective guideline term of imprisonment is 120 months.  <u>Id.</u>  There is also a mandatory minimum term of supervised release of 60 months.  <u>Id.</u> at ¶ 96.

IV.   <u>Discussion</u>

     The defendant requests a sentence of time-served, or approximately 19 months.  In doing so, the defendant primarily calls into question the validity of the various Guidelines enhancements applicable in child pornography cases.  While the Guidelines are advisory, the Court is still required to consider them in fashioning a sentence consistent with the factors detailed in 18 U.S.C. § 3553(a).  Here, even if the Court were to disregard each of the child pornography enhancements, the base offense level (18), combined with the defendant's obstruction (2), would call for a guidelines of range of 33-41 months, which is well above the 19-month sentence defendant requests.

     The defendant's papers rely heavily on the Second Circuit's guidance with respect to child pornography cases as set forth in <u>United States v. Dorvee</u>.  616 F.3d 174 (2d Cir. 2010) (noting that "unless applied with great care," the child pornography Guidelines "can lead to unreasonable sentences").  However, the defendant reads <u>Dorvee</u> too broadly.  <u>Dorvee</u> stands simply for the proposition that, in determining the reasonableness of a sentence for a particular defendant, the district court must conduct its own independent review of the § 3553(a) sentencing factors.  616 F.3d at 182.  In particular, the <u>Dorvee</u> court expressed concern that the practical results of the Guidelines applicable in child pornography cases is to "eviscerate [] the fundamental statutory requirement in § 3553(a) that district courts consider 'the nature and circumstances of the offense and the history and characteristics of the defendant . . . .'"  <u>Id.</u> at 96-97.

     Under Section 3553(a), the sentence imposed must be "sufficient, but not greater than necessary" to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide correctional treatment in the most effective manner.  <u>See</u> Section 3553(a).  The Court must

also consider a number of other factors, including but not limited to the nature of the offense; the history and characteristics of the defendant; "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct"; and the need to provide restitution to any victims.  See Section 3553.  Here, the government submits that, above and beyond the applicable Guidelines range, the sentencing considerations outlined in Section 3553(a) call for a much more substantial sentence than the time-served judgement defendant requests.

A.   The Nature and Circumstances of the Offence

The images law enforcement were able to recover in this case are concerning. The defendant's sentencing submission highlighted Dorvee's observation that the majority of child pornography cases involve images of "prepubescent minors," or minors younger than 12 years old.  That does not mitigate the conduct at issue here, because this defendant's collection did not simply include prepubescent minors.  Rather, the defendant's images included a video of an infant being used to perform oral sex on an adult male.  The defendant's selection of a video recording the abuse of an infant is an aggravating factor that sets him apart from other child pornography defendants.

Likewise, the images law enforcement recovered included a video of a 6-9 year old child having hot wax poured on her vagina while her arms were duct taped to her ankles.  This goes above and beyond the kind of bondage that might be seen in other cases. Nor can the instant case be compared to cases like Tutty, where the defendant received an enhancement for sadistic materials based upon a single photo.  612 F.3d 128, 130-131 (2010).  Indeed, as the PSR noted, even in the small collection law enforcement was able to recover, depictions of force were not uncommon.  For example, law enforcement recovered a video of another child 7-9 years old screaming as she is restrained and raped, and a video of a petite 9-11 year old child being forcefully anally raped.  These materials are consistent with the results of the defendant's evaluation by First Light, which indicated a diagnosis of Paraphilic Disorder (sexual arousing fantasies, urges or behaviors that are distressing or disabling and involve inanimate objects, children, or nonconsenting adults, or suffering of humiliation of oneself or the partner with the potential to cause harm).  PSR ¶ 64.

The defendant's obstruction must also be considered.  Because the defendant deleted materials from his phone, there can be no certainty regarding the true nature and extent of the defendant's collection.  However, the defendant did acknowledge that he had been viewing child pornography for years (PSR ¶ 7), and a preview of the images he collected over those years can be gleaned from the videos recovered in spite of his obstruction.  The foregoing counsels in favor of a more significant sentence than time-served.

B.   The History and Characteristics of the Defendant

There are also several factors to support the conclusion that the defendant represents a danger to the community.  As already noted, the defendant admitted viewing child pornography for at least several years, albeit with claimed periods of abstention.

Significantly, however, the defendant's psychological evaluations note that he tends to minimize his behavior and struggles to admit wrongdoing.  PSR ¶ 65.  In his evaluation at Butner, he denied, for example, using child pornography for sexual arousal.  He later admitted to probation that he is aroused by images of child pornography and acknowledged masturbating to images of minor females as young as approximately eight years old.  PSR ¶ 63.  The defendant's struggle to acknowledge the extent of his criminal conduct raises concerns over his ability to refrain from re-offending in the future.

That concern is amplified by the defendant's admissions that he has "less than complete control over his pornography viewing."  Id. at ¶ 64.  Indeed, he admitted acting on a foot fetish by surreptitiously photographing the feet of female (adult) students in his classes.  Id. at ¶ 65.  He also reported a substantial substance abuse beginning at age 15 and including marijuana, speed, prescription pain killers, cocaine, mushrooms, and acid.  These factors must be considered when assessing the defendant's potential danger to the community and his ability to inhibit his sexual tendencies, which, as noted by First Light' evaluation, included a persistent sexual interest in children ages 11-14, with a primary sexual interest in minor females ages 14-17.  Id. at ¶ 64.

C.     The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense

The serious of the instant offense should not be understated—although it often is.  The possession of child pornography is not a victimless crime.  In a child pornography case such as this one, the primary victims are the children depicted.  United States v. Shutic, 274 F.3d 1123, 1126 (7th Cir. 2001); United States v. Sherman, 268 F.3d 539, 547 48 (7th Cir, 2001).  As the Sherman Court noted, "child pornography directly victimizes the children portrayed by violating their right to privacy."  Id.  As such, "[o]ne of the reasons for criminalizing the 'mere' possession of child pornography is to create an incentive for the possessor to destroy the material, and alleviate some of these harms to the children depicted."  Sherman, 268 F.3d at 547.

Congress also acknowledged that "child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years. . . ."  Child Pornography Prevention Act of 1996, Pub.L. 104 208, sec. 121, 110 Stat. 3009 26, reprinted in 18 U.S.C. 2251 note at 611.  The Third Circuit Court of Appeals has summarized well the devastating, long-term impact of these offenses on the children who are victimized and abused for the entertainment of an online audience:

> The simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials.  "The materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation."  New York v. Ferber, 458 U.S. 747, 759 (1982); see also Osborne v. Ohio, 495 U.S. 103, 111 (1990) ("The pornography's continued existence causes the child victims

> continuing harm by haunting the children for years to come."). Consumers such as [the defendant] who "merely" or "passively" receive or possess child pornography directly contribute to this continuing victimization. Having paid others to 'act out' for him, the victims are no less damaged for his having remained safely at home….

United States v. Goff, 501 F.3d 250, 258-259 (3d Cir. 2007) (footnotes omitted).

The fact that the children suffer the sexual abuse in the first place is a horrible reality. The defendant, by consuming the images of their suffering—continued their exploitation for his own sexual gratification. An example of that ongoing victimization is apparent here, as the videos recovered from the defendant's phone included images of the sexual abuse of a known victim identified as "Jenny." Id. at ¶¶11-12. Jenny's victim statement is included in the PSR, and specifies the lifelong trauma to which she has been subjected, not just by her abuser, but by virtue of the fact that individuals, like the defendant, have perpetuated her victimization by viewing images of her abuse. She states: "I worry about the pictures of me that are out there and I hate that others see them. I have feared over the years that someone would recognize me in public." Id. This is precisely the kind of harm identified in Shutic: "children . . . suffer profound emotional repercussions from a fear of exposure, and the tension of keeping the abuse a secret . . . . concern for the welfare of the children who are used to create pornography is part of the public concern over child pornography." Shutic, at 1126. (citations omitted). The government submits that a time-served sentence would not adequately represent the seriousness of such an offense.

D.    The Need to Afford Adequate Deterrence to Criminal Conduct, and to Protect the Public from Further Crimes of the Defendant

Specific deterrence is of particular concern in this case. Law enforcement questioned the defendant about child pornography and seized his electronic devices more than a month before he was arrested in this case. PSR ¶¶ 6 and 9. In that timeframe, with the threat of indictment and arrest looming, the defendant still continued to view child pornography. PSR ¶ 9. While the government acknowledges that the defendant submitted himself to therapy following what he referred to as a relapse, the fact remains that even the threat of impending punishment was not sufficient to deter the defendant from additional criminal conduct. To achieve that deterrence in this case, the Court should impose a significant prison term beyond the 19-month term defendant proposes.

E.    The Need to Avoid Unwarranted Sentencing Disparities

The sentence imposed must also seek to avoid unwarranted sentencing disparities. However, a downward variance to a sentence more than 100 months below the Guidelines will do the opposite. Aggravating factors here raise concerns over the defendant's potential for recidivism and for the nature of the conduct he will engage in if he does re-offend. A 19-month sentence would not appropriately address those concerns in this or any other case.

V.      <u>Conclusion</u>

        For the reasons set forth herein, the government respectfully requests that the Court impose a least a 60-month term of imprisonment.  The government also respectfully requests that the Court impose restitution in the amount of $3,000 as set forth in the Restitution Request, which is submitted separately and under seal.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:     /s/ Monica K. Castro        
Monica K. Castro
Assistant U.S. Attorney
(631) 715-7894

cc:     Clerk of Court (JS) (By ECF and Email)
      Charles Hochbaum (By ECF and Email)
      U.S. Probation Officer Lisa Langone (By Email)

**EXHIBIT 2**



# County Court

**262 Old Country Road**
**Mineola, New York 11501**
**tel: 516-493-3700**
**fax: 516-493-3622**

April 15, 2021

William Gace
6 west Walnut St
Farmingdale NY 11735

Dkt# 00005X-2021

William Gace,

     The court has been informed that you are now currently residing in Nassau County New York. As an individual convicted of one or more of the crimes enumerated in the law, you are classified as a sex offender, subject to the provisions of Article 6-c of the Correction Law, Sex Offender Registration Act. Pursuant to Correction Law Section 168-e,.

Pursuant to the Sex Offender Registration Act, a classification will be made as to the level of community notification required based on an assessment of the degree of risk of a repeat offense and a recommendation regarding a designation, The proceeding is being held to determine whether you will be classified as a level 3 offender (risk of repeat offense is high), a level 2 offender (risk of repeat offense is moderate), or a level 1 offender (risk of repeat offense is low), or whether you will be designated as a sexual predator, a sexually violent offender or a predicate sex offender, which will determine how long you must register as a sex offender and how much information can be provided to the public concerning your registration. The classification and designation is made by the court which receives a recommendation from the Board of Examiners of Sex Offenders. (Correction Law Section 168-n). The Court has **received a Risk Level 2 Sex Offender** *recommendation* **from the Board in your case.** (See attached Risk Assessment Instrument, Case Summary and Designation Recommendation).

Before making its determination, however, the Court will conduct a proceeding by video appearance in Virtual Court. At this hearing, you have the right to appear and to submit any relevant material and be represented by counsel or if you are financially unable to afford counsel, or you were represented in the proceedings below by assigned counsel, one will be appointed for you. You also have the right to waive your video appearance and be represented by counsel and to receive pre-hearing discovery of the evidence on which the Board based its risk level recommendation.

In this regard, the Court has scheduled this hearing on the calendar of **May 20, 2021 09:30 A.M. in Part 43 before the Hon. Robert G. Bogle** At that time, you will be assigned an attorney to represent you if you cannot afford to retain one.

Enclosed is a form notification you are requested to **complete and return to the Court on or before May 20, 2021**

Very truly yours,


Gerard Prior
Associate Court Clerk

GP:GP


Enclosure

cc:     Hon. Robert G. Bogle
        Assistant District Attorney - Tara Coughlin
        Probation - Michelle Brennan


Revised 07/2/2020

**PEOPLE V. William Gace    Dkt# 00005X-2021**

I, **William Gace** acknowledge receipt of notification from the Nassau County Court of my hearing in connection with the Court's classification of me under the Sex Offender Registration Act, Correction Law Article 6-c. I have been informed that the matter is calendared in **Part 43 at 09:30 AM. on May 20, 2020 before the Hon. Robert G. Bogle.** I have been informed of my right to appear by video appearance and be represented by retained counsel or to have counsel appointed for me if I was assigned counsel at the time of my conviction and sentence or to have counsel appointed to me on my proof of financial inability to retain counsel. I have been informed that the Board of Sex Offenders has **recommended a Risk Level 2 Sex Offender classification.** and I have received a copy of the Risk Assessment Instrument, Case Summary and Designation of Recommendation.

( PLEASE CHECK ONE , A, B, C, or D )

(A) _____     I will appear by video appearance. My email address is _____
                   And my phone number is _____.

(B) _____     I will appear by video appearance and am submitting written material prior
                   to the appearance date.

(C) _____     I am submitting written material by the appearance date, but waive my right
                   to appear.

(D) _____     I waive my right to appear and my right to submit material on my behalf.


Attorney Information:

_____     I will appear by retained counsel.
               Name of Counsel: _____
               Telephone Number: _____

_____     I cannot afford an attorney and request assignment of counsel.

_____     I was represented by assigned counsel at the time of my conviction and
sentence, I cannot afford an attorney and  hereby request the continued assignment of counsel.


_____          _____
          Signature                                      Date

You will be informed of the Court's classification determination.



**Board of Examiners of Sex Offenders**

ANDREW M. CUOMO
Governor

MICHELE L. HARRINGTON
Chairperson

TO: NASSAU COUNTY COURT

FROM: BOARD EXAMINER, CHRISTOPHER SHERMAN

RE: WILLIAM GACE                                    NYSID# OR BOARD ID#:   OS4946

REPORTED ADDRESS :        6 WEST WALNUT ST.
                          FARMINGDALE, NY 11735

SUPERVISING OFFICER:
SUPERVISING AGENCY:       US PROBATION - EASTERN DISTRICT
                          75 CLINTON STREET, ROOM 405
DATE: 4/7/2021            BROOKLYN, NY 11201-4201

The above referenced individual has committed an offense in another jurisdiction and has established residence in New York State at the address indicated. It has been determined that the offender is required to register and be risk assessed as a sex offender in New York State.

The NYS Board of Examiners of Sex Offenders is recommending a risk level and designation for the offender, as indicated on the attached risk assessment instrument, case summary and designation form. Pursuant to Correction Law Section 168-k(2), the County or Supreme Court in the county of residence of the offender shall determine the offender's risk level and designation. The Court must determine whether the offender meets the definition of sexually violent offender, predicate sex offender or sexual predator as set forth in Correction Law Section 168-a(7) .

Please note, pursuant to Chapter 684 of the Laws of 2005, as of October 4, 2005, Correction Law Section 168-d, 168-k and 168-n have been amended to provide that the Court shall conduct the risk level and designation hearing if the sex offender, having been given notice including the date, time, and place of the proceeding, fails to appear without sufficient excuse. **Please note that until the court determines the offender's risk level, no community notification can occur.**

A copy of the order setting forth the risk level and designation determinations, and the findings and conclusions of law on which such determinations are based, shall be submitted to the Division of Criminal Justice Services' Sex Offender Registry Unit by the Court. These documents should be emailed to risklevel@dcjs.ny.gov.

---

### *Information below is to be completed by Sentencing Court*

**FINAL RISK LEVEL DETERMINATION** (circle one)        1        2        3

**DESIGNATION: Please check any that apply pursuant to Article 6-C of the NYS Correction Law:**

____ Sexually Violent Offender        ____ Sexual Predator        ____ Predicate Sex Offender        ____ No such designation

Judge's Name (please print): _____

Judge's signature: _____

Date signed: _____

## SEX OFFENDER DESIGNATION FORM

**Offender Name:** WILLIAM GACE

**NYSID #:** OS4946        **1ST Reviewer Initials:** CKS

The following is the Board of Examiners of Sex Offenders' recommendation pursuant to Section 168-l of Article 6-C of the NYS Correction Law as to whether the offender shall be designated a Sexually Violent Offender, Predicate Sex Offender, or Sexual Predator as defined in subdivision seven of Section 168-a or whether the offender does not fit any of those categories due to his conviction. The District Attorneys may also use this form for recommendations to the Court pursuant to their authority under Correction Law 168-d(3).

Please check all that apply:

1. ☐   **Sexually Violent Offender - a sex offender who has been convicted of a sexually violent offense defined in Correction Law section 168-a (3).**

Please check which conviction(s) apply, also please indicate whether the conviction was for an attempt at an offense:

<u>Attempt</u>

_____ _____   130.35 - Rape 1°

_____ _____   130.50 - Sodomy 1°/Criminal Sexual Act 1°

_____ _____   130.53 - Persistent sexual abuse

_____ _____   130.65 - Sexual Abuse 1°

_____ _____   130.65-a - Aggravated sexual abuse 4°

_____ _____   130.66 - Aggravated sexual abuse 3°

_____ _____   130.67 - Aggravated sexual abuse 2°

_____ _____   130.70 - Aggravated sexual abuse 1°

_____ _____   130.75 - Course of sexual conduct against a child 1°

_____ _____   130.80 - Course of sexual conduct against a child 2°

_____ _____   130.90 - Facilitating a sex offense with a controlled substance

_____ _____   130.95 - Predatory sexual assault

_____ _____   130.96 - Predatory sexual assault against a child

_____   A conviction of an offense in any other jurisdiction which includes all of the essential elements of any listed felony provided for above, or conviction of a felony in any other jurisdiction for which the offender is required to register as a sex offender in the jurisdiction which the conviction occurred.

_____ _____   A conviction of, or a conviction for an attempt to commit, any provision of a sexually violent offense as set forth in Corr. Law § 168-a(3)(a) committed or attempted as a hate crime defined in Penal Law § 485.05 (specify offense)_____

_____ _____   A conviction of, or a conviction for an attempt to commit, any provision of a sexually violent offense as set forth in Corr. Law § 168-a(3)(a) committed or attempted as a crime of terrorism pursuant to Penal Law § 490.25 (specify offense)_____

**(Continued on the next page)**

Rev. 12/07/2010

2. ☐    **Predicate Sex Offender** - a sex offender who has been convicted of an offense set forth in subdivision 2 or 3 of Correction Law Section 168-a when the offender has been previously convicted of an offense set forth in subdivision 2 or 3 of Section 168-a, regardless of the date of the prior conviction and regardless of whether the offender was required to register for the previous conviction.

Please identify below the offender's previous qualifying conviction(s) as well as the offender's current qualifying conviction, also please indicate whether the conviction was for an attempt at an offense:

Current   Previous   Attempt

———   ———   ———      120.70 - Luring a child
———   ———   ———      130.20 - Sexual Misconduct
———   ———   ———      130.25 - Rape 3°
———   ———   ———      130.30 - Rape 2°
———   ———   ———      130.35 - Rape 1°
———   ———   ———      130.40 - Criminal Sexual Act 3°/Sodomy 3°
———   ———   ———      130.45 - Criminal Sexual Act 2°/Sodomy 2°
———   ———   ———      130.50 - Criminal Sexual Act 1°/Sodomy 1°
———   ———   ———      130.52 - Forcible touching (victim<18 years old)
———   ———   ———      130.53 - Persistent sexual abuse
———   ———   ———      130.55 - Sexual abuse 3° (victim<18 years old)
———   ———   ———      130.60 - Sexual Abuse 2°
———   ———   ———      130.65 - Sexual Abuse 1°
———   ———   ———      130.65-a - Aggravated sexual abuse 4°
———   ———   ———      130.66 - Aggravated sexual abuse 3°
———   ———   ———      130.67 - Aggravated sexual abuse 2°
———   ———   ———      130.70 - Aggravated sexual abuse 1°
———   ———   ———      130.75 - Course of sexual conduct against a child 1°
———   ———   ———      130.80 - Course of sexual conduct against a child 2°
———   ———   ———      130.90 - Facilitating a sex offense with a controlled substance
———   ———   ———      130.91 - Sexually motivated felony
———   ———   ———      130.95 - Predatory sexual assault
———   ———   ———      130.96 - Predatory sexual assault against a child
———   ———   ———      *135.05 - Unlawful Imprisonment 2°
———   ———   ———      *135.10 - Unlawful Imprisonment 1°
———   ———   ———      *135.20 - Kidnapping 2°
———   ———   ———      *135.25 - Kidnapping 1°
———   ———   ———      230.04 - Patronizing a prostitute 3° (victim <17 years old)
———   ———   ———      230.05 - Patronizing a prostitute 2°
———   ———   ———      230.06 - Patronizing a prostitute 1°
———   ———   ———      230.30 (2) - Promoting prostitution 2°
———   ———   ———      230.32 - Promoting prostitution 1°
———   ———   ———      230.33 - Compelling prostitution
———   ———   ———      230.34 - Sex trafficking
———   ——NA——  ———    235.22 - Disseminating indecent material to minors 1°
———   ———   ———      **250.45(2),(3)and(4) - Unlawful surveillance 2°
———   ———   ———      250.50 - Unlawful surveillance 1°
———   ———   ———      255.25 - Incest 3°
———   ———   ———      255.26 - Incest 2°
———   ———   ———      255.27 - Incest 1°
———   ———   ———      Article 263 offenses - Sexual Performance by a Child

———   ———   ———      Conviction/Attempt to commit any provision of 130.52 or 130.55 of the
                      Penal Law regardless of age of victim and the offender has previously been
                      convicted of: (i) a sex offense listed in Correction Law § 168-a (2), or (ii) a
                      sexually violent offense listed in Correction Law § 168-a (3), or (iii) any of
                      the provisions of § 130.52 or § 130.55 of the penal law or an attempt
                      thereof.

(Continued on the next page)

_____  _____  _____    A conviction of any of the provisions of 18 U.S.C. 2251, 18 U.S.C. 2251A, 18 U.S.C. 2252, 18 U.S.C. 2252A, 18 U.S.C 2260, 18 U.S.C 2422(b), 18 U.S.C. 2423 or 18 U.S.C 2425, provided the elements of such crime of conviction are substantially the same as those which are part of such offense as of March 11, 2002.

_____  _____  _____    A conviction of an offense in any other jurisdiction which includes all of the essential elements of any such crime provided for in Corr. Law § 168-a (2) (a), (b), or (c) or any such felony as provided for in Corr. Law § 168-a(3)(a), or a conviction of a felony in any other jurisdiction for which the offender is required to register as a sex offender in that jurisdiction in which the conviction occured.

_____  _____  _____    A conviction of, or a conviction for an attempt to commit any provision of an offense as set forth in Corr. Law § 168-a(2) or (3) committed or attempted as a hate crime as defined in Penal Law § 485.05 (specify offense)_____

_____  _____  _____    A conviction of, or a conviction for an attempt to commit any provision of an offense as set forth in Corr. Law § 168-a(2) or (3) committed or attempted as a crime of terrorism pursuant to Penal Law § 490.25 (specify offense)_____

(*) 135.05, 135.10, 135.20, 135.25 - the victim must be less than 17 years old and the offender must not be the parent of the victim

(**) 250.45(2), (3), (4) - A registerable offense unless the trial court finds that registration would be unduly harsh and inappropriate. Please note that an attempt to commit this offense does not require registration.

3. ☐   **Sexual Predator - a sex offender who has been convicted of a sexually violent offense defined in Correction Law Section 168-a (3) and who suffers from a mental abnormality or personality disorder that makes him or her likely to engage in predatory sexually violent offenses.**

4. ☒   **None of the above.**

## SEX OFFENDER REGISTRATION ACT
### RISK ASSESSMENT INSTRUMENT

| RISK FACTOR | VALUE | | SCORE |
|---|---|---|---|
| **I. CURRENT OFFENSE(S)** | | | |
| **1. Use of Violence** | | | |
| Used forcible compulsion | +10 | | |
| Inflicted physical injury | +15 | | 0 |
| Armed with a dangerous instrument | +30 | | |
| **2. Sexual Contact with Victim** | | | |
| Contact over clothing | +5 | | |
| Contact under clothing | +10 | | 0 |
| Sexual intercourse, deviate sexual intercourse or aggravated sexual abuse | +25 | | |
| **3. Number of Victims** | | | |
| Two | +20 | | 0 |
| Three or more | +30 | | |
| **4. Duration of offense conduct with victim** | | | |
| Continuing course of sexual misconduct | +20 | | 0 |
| **5. Age of victim** | | | |
| 11 through 16 | +20 | | 30 |
| 10 or less, 63 or more | +30 | X | |
| **6. Other victim characteristics** | | | |
| Victim suffered from mental disability or incapacity or from physical helplessness | +20 | | 0 |
| **7. Relationship with victim** | | | |
| Stranger or established for purpose of victimizing or professional relationship | +20 | | 0 |
| **II. CRIMINAL HISTORY** | | | |
| **8. Age at first sex crime** | | | |
| 20 or less | +10 | | 0 |
| **9. Number and nature of prior crimes** | | | |
| Prior history/no sex crimes or felonies | +5 | | |
| Prior history/non-violent felony | +15 | | 0 |
| Prior violent felony, sex crime or endangering welfare of a child | +30 | | |
| **10. Recency of prior felony or sex crime** | | | |
| Less than 3 years | +10 | | 0 |
| **11. Drug or Alcohol abuse** | | | |
| History of abuse | +15 | X | 15 |
| **COLUMNS 1-11 SUBTOTAL** | | | 45 |

## SEX OFFENDER REGISTRATION ACT
### RISK ASSESSMENT INSTRUMENT

| RISK FACTOR | VALUE | SCORE |
|---|---|---|
| **III. POST-OFFENSE BEHAVIOR** | | |
| **12. Acceptance of Responsibility** | | |
| Not accepted responsibility | +10 | 0 |
| Not accepted responsibility / refused or expelled from treatment | +15 | |
| **13. Conduct while confined / supervised** | | |
| Unsatisfactory | +10 | 0 |
| Unsatisfactory with sexual misconduct | +20 | |
| **IV. RELEASE ENVIRONMENT** | | |
| **14. Supervision** | | |
| Release with specialized supervision | 0 | |
| Release with supervision | +5 | 0 |
| Release without supervision | +15 | |
| **15. Living / employment situation** | | |
| Living or employment inappropriate | +10 | 0 |
| **COLUMNS 12-15 SUBTOTAL** | | 0 |
| **COLUMNS 1-11 SUBTOTAL** | | 45 |
| **TOTAL RISK FACTOR SCORE (add 2 subtotals)** | | 45 |

X    2    3

| Level I (low) | = | 0 to +70 |
|---|---|---|
| Level 2 (moderate) | = | +75 to +105 |
| Level 3 (high) | = | +110 to +300 |

Note: The Sex Offender Registration Act requires the court or Board of Examiners of Sex Offenders to consider any victim impact statement in determining a sex offender's level of risk.

---

Offender Name: **WILLIAM GACE**

NYSID #: **OS4946**

Indictment #: _____

DIN: _____

**RISK LEVEL: 2**

Assessor's Signature *Christopher Newman*

Date: 4/7/21

**A. Overrides** (If any override is circled, offender is presumptively a Level 3)

1. Offender has a prior felony conviction for a sex crime

2. Offender inflicted serious physical injury or caused death

3. The offender has made a recent threat that he will reoffend by committing a sexual or violent crime

4. There has been a clinical assessment that the offender has a psychological, physical, or organic abnormality that decreases ability to control impulsive sexual behavior

**B. Departure**

1. A departure from the risk level is warranted

   [X] Yes    [ ] No

2. If yes, circle the appropriate risk level    1    X    3

3. If yes, explain the basis for departure ( See Summary)

RE:     WILLIAM  GACE
        NYSID #:  OS4946

DATE:   4/7/2021

---

# CASE SUMMARY

This assessment is based upon a review of the inmate's file which may include but is not limited to the pre-sentence investigation, prior criminal history and post-offense behavior.

William Gace is a 35-year-old (DOB: 05/24/1985) sex offender who was convicted in Federal Court by guilty plea of Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(4)(B), on October 25, 2019. He was sentenced to 33 months in the Federal Bureau of Prisons (BOP), to be followed by 7 years of supervised release. He was released on February 12, 2021 via "Good Conduct Time." The Board of Examiners of Sex Offenders ("the Board") was notified of on February 17, 2021 that Mr. Gace was residing at an address in Nassau County, New York. He is being supervised by United States Probation Officer (U.S.P.O) Christina Bourque. As a resident of New York, he is required to register as a sex offender for this Federal offense.

According to the Federal Court Indictment filed on June 6, 2019, the Federal Court Complaint filed on October 12, 2018, the Offense Conduct Information dated March 24, 2021 and completed by U.S.P.O. Christina Bourque, the Defense Counsel Sentencing Submission (the "Defense Counsel") filed on May 30, 2020 and the U.S. Government's Sentencing Letter (the "Government") dated May 7, 2020, the instant offense occurred on or about September 10, 2018 and involved Mr. Gace knowingly possessing child pornography depicting children as young as infant age stored on his cell phone and a Secure Digital ("SD") card. Further, in or about and between February 2016 and September 2018 he knowingly received child pornography on a computer. His offense was discovered during an investigation by the Federal Bureau of Investigation ("FBI") regarding the trading of child pornography in group chats through the instant messaging application Kik. One of the users identified as "MoistMargaret" uploaded four images to a group chat on or about February 8, 2016. The user MoistMargaret was associated with an e-mail address and Internet Protocol ("IP") address connected to Mr. Gace.

On or about September 10, 2018, the FBI interviewed Mr. Gace at his residence, and he acknowledged using Kik in the past but had not done so in a "few" years. He admitted to being in chatrooms and seeing "questionable" pictures. He further admitted to receiving child pornography through Kik and message boards that included child pornography representing "all ages." He admitted to struggling with child pornography for years and wanted to stop. He further stated he deleted child pornography on his phone when the FBI came to his residence. Mr. Gace gave FBI agents an SD card after signing a consent to search his phone and agents saw it was missing. He consented to a search of the SD card. The FBI recovered one image of child pornography and later 30 additional images on the deleted space of the SD card. Based on this, on October 12, 2018, law enforcement agents executed a search warrant at his residence. He was interviewed and admitted he deleted child pornography files from his phone, which depicted children who were approximately 10 years old. He stated he had child pornography on his phone when agents first arrived at his house because he recently "relapsed." He noted he had an impulse that he could not fight to download child pornography. He said he had since started therapy to help with his problem. He further acknowledged previously downloading child pornography, obtaining it from various message boards and viewing it since his last encounter with law enforcement. Among the images recovered were videos depicting a female child 7 to 9 years old crying and screaming while restrained and raped by and adult male, an adult male repeatedly forcing and infant/toddler-aged child's mouth over his erect penis, a female child approximately 9 to 11 years old forcefully and repeatedly anally raped by an adult male, a female child approximately 6 to 8 years old

---

# CASE SUMMARY

repeatedly digitally penetrated by an adult male and forced to perform oral sex and three female children approximately 6 to 9 years old that included one of the children's hands tied to her ankles with duct while raped by an adult male as well as pouring hot wax on the child's vagina and raping her with a vibrating phallic device.

Per the U.S. Government, Defense Counsel and the Offense Conduct Information, Mr. Gace was evaluated at First Light Psychological Services ("First Light") and at the Federal Medical Center, Butner ("FMC Butner"). On October 19, 2018 he was ordered to undergo hospitalization and treatment to determine his competency to stand trial and was sent to FMC Butner for continued evaluation and treatment. He was diagnosed with Major Depressive Disorder, recurrent and severe. It was determined he appeared not to meet criteria for a primary psychiatric disorder like schizophrenia or schizoaffective disorder. He remained at FMC Butner until May 2019. He was reportedly prescribed lithium and other medications to manage his symptoms while there. At First Light he was diagnosed with Schizophrenia, Major Depressive Disorder, recurrent and severe, Post Traumatic Stress Disorder (PSTD), Generalized Anxiety Disorder, Paraphilic Disorder Not Otherwise Specified, Fetishism with feet and hands, Coprophilia, Ephebophilia and Hebephilia. The First Light evaluation was not available to the Board and full context of the basis of his diagnoses is not entirely clear. The U.S. Government indicated both evaluations noted he minimized his behavior and struggled to admit wrongdoing. For instance, he reportedly denied using child pornography for sexual arousal when he later admitted to U.S. Probation he was aroused by and masturbated to images of child pornography depicting females as young as 8 years old. The U.S. Government highlighted that he further admitted to having "less than complete control over his pornography viewing" and acting on a foot fetish by surreptitiously photographing the feet of adult female students in his classes. According to the U.S. Government, testing during his First Light evaluation showed he had a persistent sexual interest in children aged 11 to 14, with a primary interest in minor females aged 14 to 17. Notably, his acting on a foot fetishism and the testing results may account for First Light indicating the presence of Fetishism, Ephebophilia and Hebephilia, the latter two of which are not valid diagnoses/paraphilias in the Fifth Edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-5). Defense Counsel further noted between the time of his first contact with law enforcement in September 2018 and his arrest in October 2018 he checked himself into a psychiatric hospital to deal with his reported sex addiction related to pornography use. Defense Counsel also pointed out Mr. Gace did not distribute child pornography for a commercial purpose, did not use his computer to contact or entice minors and that there was no evidence of him having sexual contact with a child. The Offense Conduct Information indicates he was admitted to South Oaks Hospital ("South Oaks") presenting with suicidal thoughts and planning and was discharged on October 11, 2018.

Mr. Gace's criminal history began with the instant offense. The Board does not have any significant information about his personal history other than what was noted by Defense Counsel and in letters of support from family members. Defense Counsel did note he obtained a master's degree and had a position as an adjunct professor. His mother, sister, aunt, uncle, cousin all wrote letters to the Federal Judge in support of him. The letters further confirm he was working as an adjunct professor at the time of his arrest. There is no mention of any significant dating relationships. His mother noted in her letter how he suffered from depression since childhood. He also reportedly battled cancer while obtaining his master's degree. His family admitted him to a psychiatric center after the FBI had contact with him in September 2018 due to a severe mental breakdown. He was reportedly diagnosed with Bipolar and Schizoaffective Disorder.

## CASE SUMMARY

The U.S. Government indicated that Mr. Gace reported substantial substance abuse beginning at the age of 15 and included use of marijuana, speed, prescription pain killers, cocaine, mushrooms and acid. Defense Counsel reported he admitted to First Light abusing alcohol and drugs into his early twenties. The Offense Conduct Information indicated he reported to South Oaks using LSD, cocaine, mushrooms and salvia, which led to him experiencing hallucinations. He reported to U.S. Probation he began drinking alcohol at 14 years old and his use increased at the age of 17 to intoxication three to four times per week, which continued until his late twenties. He reported first using marijuana at the age of 15 and at 16 he stated he began smoking it multiple times a day four or five days a week. He stated his use increased in his mid-twenties when he was smoking "non-stop, every day." He said similar to his alcohol use, his marijuana use diminished at approximately 26 years old. He reported trying cocaine on several occasions, abusing dextromethorphan from the age of 16 to approximately 25 years old, and using LSD a couple times a week from 19 years old until he had a "bad trip" at the age of 22. He further reported abusing prescribed medications. While battling cancer, he would save the pain medication prescribed to him until he physically felt better and would use four to five pills per day, several days per week. There is no information linking any alcohol or substance abuse to the instant offense conduct and no evidence establishing he continued to abuse alcohol or marijuana after the age of 26. He was detected for the instant offense at the age of 33. Based on the letter from his mother to the Federal Judge, he was diagnosed with cancer shortly after March 2016, therefore putting time timeframe of his abuse of prescription drugs near the time of the instant offense. Considering he reported battling with viewing child pornography for several years before detection in 2018 together with the clear and convincing evidence of a history of severe substance abuse for many years, he will be scored for having a history of substance abuse.

There is no information verifying whether Mr. Gace participated in sex offender treatment while in the BOP, however it was recommended by the Federal Court he be placed in a non-residential sex offender treatment program. His Special Conditions of Supervision indicate he will be required to participate in sex offender treatment in the community. Although it is noted that he struggled with culpability prior to sentencing, he will be scored for having accepted responsibility based solely on his guilty plea. The Court may wish to inquire about his progress in any treatment in the community at the time of his SORA hearing and adjust his score for this factor if necessary.

According to the BOP Prison Release Notification dated November 27, 2020, Mr. Gace was considered for "Good Conduct Release" and this is a good indicator his disciplinary conduct in the BOP was without any recent serious incident. Therefore, his conduct while confined will be considered satisfactory. His conduct while supervised will be considered satisfactory thus far, absent information to the contrary.

As noted, Mr. Gace has a history of mental illness and it was also recommended by the Federal Court he receive mental health treatment while in the BOP. His current mental health stability is unknown.

Please note, his clinical diagnosis of Paraphilic Disorder Not Otherwise Specified is not clear or conclusive enough for the Board to determine if an override based on the clinical assessment by First Light is warranted.

Mr. Gace is scored on the Risk Assessment Instrument for possessing images and videos of child pornography depicting children under the age of 11 (30 points).

# CASE SUMMARY

Mr. Gace is assessed as a Level 1 (Low) risk.  However, in accordance with the Board's Scoring of Child Pornography Position Statement, a departure to a Level 2 (Moderate) Risk considering the following aggravating factors:

1. He admitted to struggling with viewing child pornography for many years and could not control his urges to stop.  This even despite being detected by law enforcement initially.

2. The material included sadomasochistic depictions or other portrayals of violence with children.

3. Accompanied with his urges to view child pornography are other concerning deviant sexual paraphilias including foot fetishism which he acted on by surreptitiously photographing the feet of adult female students.

4. There is evidence he has a fixed sexual attraction to children as young as 11 years old with a primary sexual interest in adolescent females as opposed to adults, which may be a driving force to seek out child pornography again.

5. There is no evidence he has been able to form any successful long-term relationships with an adult romantic partner that is indicative of severe intimacy deficits that will lead him to seeking out child pornography to continue meeting his sexual needs.

Collectively, these factors show that Mr. Gace struggled with a severe impulse in viewing child pornography for several years and this coupled with strong evidence of other deviant sexual impulses and a paraphilic disorder increases his chances of reoffending to a degree that warrants a Level 2 classification.

**EXHIBIT 3**

# *In the Name of the People of the State of New York*

TO:     First Light Psychological Services

**GREETINGS: YOU ARE COMMANDED to appear before the** SUPREME COURT OF THE COUNTY OF NASSAU, at the Nassau County Courthouse, 272 Old Country Road, Mineola, New York, at 9:30 a.m., on **August 26, 2021** as a witness in a criminal action prosecuted by the PEOPLE OF THE STATE OF NEW YORK against **SGJ 21-1/RB 22a-21, Subpoena No. 277-21** and you are required to bring with you and/or produce at the time and place aforesaid, the following:

Please provide all UNREDACTED records and documentations from May 1, 2019 to the end of care including but not limited to psychological reports, diagnoses, notes, mental health treatment to the following:

William Gace, DOB: 05/24/1985

**Please provide the information by email recsubpoena.response@nassauda.org**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## IF THIS SUBPOENA IS DISOBEYED
You may be prosecuted for the crime of CRIMINAL CONTEMPT IN THE SECOND DEGREE and, if found guilty, you will be subject to IMPRISONMENT FOR UP TO ONE YEAR AND A FINE OF UP TO ONE THOUSAND DOLLARS.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

NOTE: If this case should not be called on the day mentioned in this subpoena, YOU ARE DIRECTED to attend from day to day until you are discharged.

**Dated:**  Mineola, New York
          August 6, 2021

**ADA:**  Melissa Scannell

**Bureau:** Rackets & Enterprise Crime
**Phone:** (516) 571-2553
**Fax:**    (516) 741-7550

So Ordered: _____

**Honorable Robert G. Bogle**
**Acting Supreme Court Justice**

☐   You may surrender requested items to a representative of the District Attorney, who will pick them up when ready, or you may produce them at the Grand Jury.

☒   In lieu of personal appearance, you may mail requested items to:
     Honorable Judge Robert G. Bogle
     262 Old Country Road
     Mineola, NY 11501  ATTN: Sean Wright, Esq.

Please take notice that retention of requested items will be sought pursuant to CPL § 610.25.
**YOU ARE REQUESTED not to disclose the existence of this subpoena. Any such disclosure could impede the investigation being conducted and thereby interfere with the enforcement of the law.**